IN THE MATTER OF PHILLIP WHARTON, JUVENILE

No. 9PA82

(Filed 4 May 1982)

1. **Appeal and Error § 7; Infants § 21— juvenile court order—no right by county to appeal**

    Guilford County did not have the right to appeal from an order entered by the district court in a juvenile delinquency proceeding requiring the Guilford County Department of Social Services and other county agencies to establish a group or foster home for the juvenile and others like him.

2. **Infants § 20; Contempt of Court § 3.2— juvenile proceeding—order requiring county to establish group home—invalidity—failure to comply not contempt of court**

    The district court had no authority under G.S. 7A-646 and G.S. 7A-647 to order the Guilford County Department of Social Services, in conjunction with other agencies, to "implement the creation of a foster home to be found by the County" with appropriate staff wherein a juvenile determined incapable of standing trial and others like him might be "permanently domiciled for program treatment and delivery of services." Therefore, the director of the Guilford County Department of Social Services could not be held in contempt for failure to comply with the order.

ON discretionary review of decision of the Court of Appeals [54 N.C. App. 447, 283 S.E. 2d 528 (1981)] dismissing appeal from order entered on 3 November 1980 by *Pfaff, Judge,* in District Court, GUILFORD County.

This is a proceeding under the North Carolina Juvenile Code, Articles 41-54 of Chapter 7A of the General Statutes.

On 17 June 1980, M. T. Parker of the Greensboro Police Department filed a petition alleging that Phillip Wharton is 14 years of age; and that Phillip is a delinquent child as defined by G.S. 7A-278(2) in that on or about 17 June 1980 Phillip did unlawfully, wilfully and feloniously attempt to break and enter the residence of Gennie Mae Madkins, located at 1936 Perkins Street, Greensboro, North Carolina, with the intent to commit a felony therein, to wit: "murder, to kill Jackie Madkins." Attorney A. Frank Johns was appointed to represent Phillip.

On said date Phillip was living with his mother. He was taken into custody and placed in the Guilford County Detention Center where he was held until August. On several previous occa-

sions Phillip had been taken into custody and examined at various places including John Umstead Hospital. He had displayed aggressive, violent, psychotic and explosive tendencies toward females. He had been diagnosed as a child with adolescent psychosis and moderate mental retardation. His mother was unable to control him and she had sought help from the police and other authorities.

On 4 August 1980, Phillip's court appointed counsel filed a motion questioning the juvenile's competency to stand trial. The court ordered that Phillip be admitted to the forensic unit of Dorothea Dix Hospital for psychiatric evaluation. On 8 August 1980 the court ordered Dr. Allen Sherrow, a forensic psychiatrist, to conduct the evaluation. Dr. Sherrow submitted his report to the court on 14 August 1980. The following day the court found that Phillip lacked the capacity to stand trial and ruled that the matter be disposed of in accordance with G.S. 7A-647(3).

The court heard extensive testimony from Dr. Michael Petty, child psychiatrist at John Umstead's Intensive Diagnostic and Treatment Unit for Adolescents. Dr. Petty had been Phillip's attending psychiatrist during Phillip's previous admissions to that facility, in particular on 20 November 1979, 3 December 1979, and 3, 23 and 30 January 1980. The court also heard testimony from Jim Davis, director of the Guilford County Detention Center, and from Mrs. Nancy Stentz, Phillip's teacher at McIver School and the detention home.

As a result of the August hearing, the court ordered that a meeting be held with representatives of all involved Guilford County agencies attending. The court ordered that the results of the meeting be submitted to the court in one week. The court also ordered that an executive committee having final decision making authority at the meeting be established. That committee would be composed of the following persons: James DeGraphenreid, court counselor; Mrs. Nancy Stentz, teacher, Greensboro City Schools; Dr. Sherrow, child psychiatrist; and Mr. Johns, Phillip's attorney.

On 22 August 1980 the committee submitted a report to the court outlining the results of the meeting. After hearing further evidence, the court, on 27 August 1980 entered a dispositional order which made numerous findings of fact and conclusions of law. The order provided that Phillip would be placed in the Man-

dala Center in Winston-Salem for a period of not more than six weeks where he would receive medical, psychological, psychiatric, educational and other services necessary to meet his needs. The court then ordered the following:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Guilford County Department of Social Services shall in conjunction with the Mental Health, Mental Retardation and Substance Abuse Authority implement the creation of a foster home to be found by the County in which appropriate staff are placed and the juvenile and other juveniles like him could be permanently domiciled for program treatment and delivery of services. The agencies are to initiate a coordinated effort with the higher education facilities in the Greensboro community in order to pursue a source of staffing. Graduate or other special education students should be considered to be hired on an independent contracting basis in which they are allowed to reside in the foster home, receive room and board, and gain credit hours for directed individual studies and behavioral management in the home environment and supervision of said juvenile. The students should be under the supervision and guidance of the directors of the different college level programs and under the direction and supervision of the Department of Social Services through its regulations dealing with foster home parents and special retardation service programming.

On 17 October 1980, Attorney Johns, on behalf of Phillip, filed a motion alleging that the Department of Social Services "by and through its Director, Frank Wilson", and the Area Mental Health, Mental Retardation and Substance Abuse Authority "by and through its Director Daylon Greene", had failed to comply with the order of the court. The motion asked that said Greene and Wilson be ordered to show cause why they should not be adjudged in contempt of court.

On 17 October 1980 the court entered an order requiring Frank Wilson and Daylon Greene to appear on 23 October 1980 and show cause, if any they had, why they should not be "attached and punished for contempt for the wilful violation of the Order of this Court as set forth in the petition of the movant."

A hearing was held on the motion to show cause. At the hearing several witnesses, including Wilson and Greene, were called. The court and Phillip's attorney attempted through extensive questioning of Wilson to show that the foster home envisioned by the portion of the 27 August 1980 order quoted above had not been established primarily because of lack of effort on the part of Wilson. Wilson attempted to convince the court that although he had made a determined effort to establish the home, he had been unable to do so.

Following the hearing the court entered an order making findings of fact and adjudged that Daylon Greene was not in wilful contempt of court but that Frank Wilson was in contempt. The court provided that Wilson could purge himself of the finding of contempt by prompt payment of $500.00 "and the concerted and dedicated effort with complying with the Court's order regarding a group home or foster home for Phillip Wharton and other children like him."

Notice of appeal to the entry of the 23 October 1980 order was given orally in open court. Guilford County perfected an appeal to the Court of Appeals and its deputy county attorney filed a brief on behalf of the county. The Court of Appeals concluded that Guilford County did not have the right to appeal from the challenged orders and dismissed the appeal.[1]

Guilford County and its director of the Department of Social Services, Frank Wilson, petitioned this court for discretionary review of the decision of the Court of Appeals dismissing the appeal to that court. On 14 January 1982 we allowed the petition.

---

1. On 12 September 1980 Judge Pfaff also entered an order requiring Guilford County to pay all "reasonable costs and itemized fees of A. Frank Johns in this case not paid for by the Administrative Office of the Courts." He provided that the hourly rate for compensation would be $40 per hour. Guilford County appealed from that order and the Court of Appeals reversed it, holding that fees of assigned counsel for indigents, including indigent juveniles, shall be borne by the State. *See* G.S. 7A-452(b). This court has not been asked to review the decision of the Court of Appeals as it related to the 12 September 1980 order, therefore, the matter is not before the Supreme Court.

*Margaret A. Dudley, Deputy Guilford County Attorney, for Guilford County and Guilford County Department of Social Services.*

*Booth, Harrington, Johns & Campbell, by A. Frank Johns, Attorney for Phillip Wharton, Juvenile.*

BRITT, Justice.

I.

[1] First, we address the procedural aspects of this case. Relying on our decision in *In Re Brownlee*, 301 N.C. 532, 272 S.E. 2d 861 (1981), the Court of Appeals properly held that Guilford County had no right to appeal from the order dated 23 October 1980 and filed 3 November 1980. We reaffirm our decision in *Brownlee* with respect to a county's right to appeal from orders entered in a juvenile proceeding.

Nevertheless, as we said in *Brownlee*, this court is authorized to issue "any remedial writs necessary to give it general supervision and control over the proceedings of the other courts" of the state. North Carolina Constitution, Article IV, Section 12(1). We also said in *Brownlee* that

> Under exceptional circumstances this court will exercise power under this section of the constitution in order to consider questions which are not presented according to our rules or procedure; *State v.Stanley*, 288 N.C. 19, 215 S.E. 2d 589 (1975); and this court will not hesitate to exercise its original supervisory authority when necessary to promote the expeditious administration of justice. *Brice v. Robertson House Moving, Wrecking and Salvage Co.*, 249 N.C. 74, 105 S.E. 2d 439 (1958); *Park Terrace, Inc. v. Phoenix Indemnity Co.*, 243 N.C. 595, 91 S.E. 2d 584 (1956).

301 N.C. at 548.

Due to the far reaching effect of Judge Pfaff's orders on Guilford County and the director of its Department of Social Services, we consider this case to be of sufficient importance for us to invoke our supervisory authority. We have therefore allowed Guilford County's petition for discretionary review. We now treat the papers filed in this court on behalf of Guilford County

---

---

and Frank Wilson as a petition for a writ of certiorari to review the orders of the trial court, and as a motion to bypass the Court of Appeals, and allow the petition and motion.

## II.

[2]   Before passing upon the validity of the 3 November 1980 order adjudging Frank Wilson, Director of the Department of Social Services for Guilford County, in contempt of court, we must consider the validity of the portion of the trial court's order entered 27 August 1980 upon which the 3 November 1980 order was predicated. In *In Re Smith*, 301 N.C. 621, 272 S.E. 2d 834 (1981), Justice Huskins, speaking for this court, said:

> Disobedience of an order made without, or in excess of, jurisdiction is not punishable as contempt. *State v. Black*, 232 N.C. 154, 59 S.E. 2d 621 (1950); *see also* 17 Am. Jur., 2d, Contempt, § 42, and cases cited in footnote 9; 17 C.J.S., Contempt § 14.

301 N.C. at 633.

The key provision of the 27 August 1980 order which is the basis for the trial court adjudging Mr. Wilson to be in contempt provides as follows:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Guilford County Department of Social Services shall in conjunction with the Mental Health, Mental Retardation and Substance Abuse Authority implement the creation of a foster home to be found by the County in which appropriate staff are placed and the juvenile and other juveniles like him could be permanently domiciled for program treatment and delivery of services.

We hold that the trial court exceeded its authority in entering the quoted provision of the 27 August 1980 order. Hence, the 3 November 1980 order adjudging Wilson in contempt of court is invalid and must be vacated.

In its dispositional order of 27 August 1980 the trial court found that the juvenile was incompetent to stand trial, and that G.S. 7A-646 and 647 provided for dispositional alternatives for a juvenile who had been found to be mentally ill or mentally re-

tarded and in need of medical, surgical, psychiatric, psychological or other treatment. It is clear that the court relied on those statutes for its authority to enter the order in question.

G.S. 7A-646 provides:

> The purpose of dispositions in juvenile actions is to design an appropriate plan to meet the needs of the juvenile and to achieve the objectives of the State in exercising jurisdiction. If possible, the initial approach should involve working with the juvenile and his family in their own home so that the appropriate community resources may be involved in care, supervision, and treatment according to the needs of the juvenile. Thus, the judge should arrange for appropriate community-level services to be provided to the juvenile and his family in order to strengthen the home situation.

> In choosing among statutorily permissible dispositions for a delinquent juvenile, the judge shall select the least restrictive disposition both in terms of kind and duration, that is appropriate to the seriousness of the offense, the degree of culpability indicated by the circumstances of the particular case and the age and prior record of the juvenile. A juvenile should not be committed to training school or to any other institution if he can be helped through community-level resources.

G.S. 7A-647 provides:

> The following alternatives for disposition shall be available to any judge exercising jurisdiction, and the judge may combine any of the applicable alternatives when he finds such disposition to be in the best interest of the juvenile:

> (1) The judge may dismiss the case, or continue the case in order to allow the juvenile, parent, or others to take appropriate action.

> (2) In the case of any juvenile who needs more adequate care or supervision or who needs placement, the judge may:

> a. Require that he be supervised in his own home by the Department of Social Services in his coun-

ty, a court counselor or other personnel as may be available to the court, subject to conditions applicable to the parent or the juvenile as the judge may specify; or

b. Place him in the custody of a parent, relative, private agency offering placement services, or some other suitable person; or

c. Place him in the custody of the Department of Social Services in the county of his residence, or in the case of a juvenile who has legal residence outside the State, in the physical custody of the Department of Social Services in the county where he is found so that agency may return the juvenile to the responsible authorities in his home state. Any department of social services in whose custody or physical custody a juvenile is placed shall have the authority to arrange for and provide medical care as needed for such juvenile.

(3) In any case, the judge may order that the juvenile be examined by a physician, psychiatrist, psychologist or other qualified expert as may be needed for the judge to determine the needs of the juvenile. If the judge finds the juvenile to be in need of medical, surgical, psychiatric, psychological or other treatment, he shall allow the parent or other responsible persons to arrange for care. If the parent declines or is unable to make necessary arrangements, the judge may order the needed treatment, surgery or care, and the judge may order the parent to pay the cost of such care pursuant to G.S. 7A-650. If the judge finds the parent is unable to pay the cost of care, the judge may charge the cost to the county. If the judge believes, or if there is evidence presented to the effect that the juvenile is mentally ill or is mentally retarded the judge shall refer him to the area mental health, mental retardation, and substance abuse director or local mental health director for appropriate action. A juvenile shall not be committed directly to a State hospital or mental retardation center; and orders pur-

porting to commit a juvenile directly to a State hospital or mental retardation center except for an examination to determine capacity to proceed shall be void and of no effect. The area mental health, mental retardation, and substance abuse director or local mental health director shall be responsible for arranging an interdisciplinary evaluation of the juvenile and mobilizing resources to meet his needs. If institutionalization is determined to be the best service for the juvenile, admission shall be with the voluntary consent of the parent or guardian. If the parent, guardian, or custodian refuses to consent to a mental hospital or retardation center admission after such institutionalization is recommended by the area mental health, mental retardation, and substance abuse health director, the signature and consent of the judge may be substituted for that purpose. In all cases in which a regional mental hospital refuses admission to a juvenile referred for admission by a judge and an area mental health, mental retardation, and substance abuse director or discharges a juvenile previously admitted on court referral prior to completion of his treatment, the hospital shall submit to the judge a written report setting out the reasons for denial of admission or discharge and setting out the juvenile's diagnosis, indications of mental illness, indications of need for treatment, and a statement as to the location of any facility known to have a treatment program for the juvenile in question.

We find nothing in the quoted statutes which authorizes the district court to require a County Department of Social Services, either by itself or in conjunction with another agency, to "implement the creation of a foster home to be found by the County" with appropriate staff, wherein a juvenile and others like him might be "permanently domiciled for program treatment and delivery of services." In addition to the requirements placed on the Director of Social Services, the order also appears to require the county to "find" a suitable house in which the juvenile and the treatment staff could be "permanently domiciled." We find no authority for this section.

It is possible that the trial judge felt that the first sentence of G.S. 7A-646 provided him with the authority to enter the challenged portion of the order in question. This sentence provides that "[t]he purpose of disposition in juvenile actions is to design an appropriate plan to meet the needs of the juvenile and to achieve the objectives of the State in exercising jurisdiction." We agree that this sentence affords the court considerable flexibility "to design an appropriate plan to meet the needs of the juvenile." However, we do not think this sentence authorizes the court, as it did in this case, to direct a county or any of its agencies to spend large sums of money in the acquisition of real estate, either by purchase or lease, in the equipping and furnishing of the property, and in employing personnel in order to carry out a plan that the court feels would be appropriate to meet the needs of a particular juvenile and others like him. Among other things, we can envision serious budgeting problems that counties and their agencies would encounter if the district courts had this authority.

We have also reviewed other statutes which might possibly provide the court with the authority it attempted to exercise in this instance. We are unable to find that authority. G.S. 7A-648 is entitled "Dispositional alternatives for delinquent or undisciplined juvenile" and G.S. 7A-649 is entitled "Dispositional alternatives for delinquent juvenile." Neither of these statutes vests the court with the authority in question.

While matters implied by the language of statutes must be given effect to the same extent as matters specifically expressed, *Iredell County Board of Education v. Dickson*, 235 N.C. 359, 70 S.E. 2d 14 (1952), the court may not, under the guise of judicial interpretation, interpolate provisions which are lacking. *Board of Education v. Wilson*, 215 N.C. 216, 1 S.E. 2d 544 (1939); 12 Strong's N.C. Index, 3d, Statutes, § 5.

We can appreicate the great problems district court judges are having in deciding what to do with certain juveniles. Judge Pfaff is to be commended for seeking cooperation with the Department of Social Services and other agencies in trying to bring into existence facilities and programs that would best serve the needs of Phillip and others like him. But there is a limit to what the court can do by fiat.

Love v. Moore

· For the reasons stated, that part of the Court of Appeals' decision dismissing Guilford County's appeal from the order entered 3 November 1980 is vacated, and said order adjudging Frank Wilson in contempt of court and ordering him to pay a fine and do other things is

Reversed.