STATE OF NORTH CAROLINA v. ROBERT GRAVETTE

No. 99PA90

(Filed 26 July 1990)

### 1. Arrest and Bail § 140 (NCI4th) — murder — defendant incompetent to stand trial — not eligible for involuntary commitment — pretrial release

A judge of the superior court did not have statutory authority to compel the Division of Adult Probation and Parole, without its consent, to supervise the conditional release of a pretrial murder detainee who has not been tried or convicted because of his lack of capacity to proceed to trial and who is not eligible for involuntary commitment. N.C.G.S. § 15-205 and Article 2 of Chapter 15A do not apply because the defendant has not been convicted of a crime and the offenses with which he is charged do not qualify for deferred prosecution; N.C.G.S. § 15A-534 and N.C.G.S. § 15A-1004 require the agreement of the person or organization in whose custody the defendant would be placed; N.C.G.S. § 122C-271(a)(1) is not applicable because defendant is not on outpatient commitment; and N.C.G.S. § 122C-277(b) merely mandates a hearing and contains no authority for the actions taken in this case.

**Am Jur 2d, Bail and Recognizance § 99.**

### 2. Arrest and Bail § 140 (NCI4th) — murder — defendant incompetent to stand trial — not eligible for involuntary commitment — pretrial release

The trial court lacked the inherent authority to order the Division of Adult Probation and Parole to provide services not specified by statute in supervising a murder defendant who was incompetent to stand trial but ineligible for involuntary commitment where the DAPP did not consent to such supervision. In order for the court's power to be inherent, it must be reasonably necessary for the exercise of its proper function and jurisdiction in the administration of justice and is not granted or denied to it by the Constitution or by a constitutionally enacted statute.

**Am Jur 2d, Courts §§ 78, 79.**

STATE v. GRAVETTE

[327 N.C. 114 (1990)]

ON the State's petition, filed 13 March 1990 by its Division of Adult Probation and Parole (hereinafter "DAPP") for writ of mandamus or, alternatively, for writ of prohibition to vacate or void the modified order of *Herring, J.*, entered 5 March 1990, requiring DAPP, without its consent, to provide certain supervision of defendant. On 5 April 1990, this Court denied a petition by the State on behalf of DAPP for a temporary stay and supersedeas and, in the exercise of its supervisory power over the trial courts, ordered accelerated briefing and oral argument on defendant's petition. The matter was heard in the Supreme Court on 17 May 1990,[1] and the Court elected to treat the petition as a petition for writ of certiorari and allowed it for the purposes of review.

*Lacy H. Thornburg, Attorney General, by Jane R. Garvey, Associate Attorney General, and Sylvia Thibaut, Assistant Attorney General, for the State-appellant.*

*J. Kirk Osborn for defendant-appellee.*

MEYER, Justice.

Defendant stands charged with two counts of first-degree murder and is currently a pretrial detainee in the Orange County jail in custody of the sheriff of that county. As will later appear in some detail, defendant has several times been evaluated for competency to proceed to trial as well as to determine whether he was mentally ill and whether he was a danger to himself or others. Judge Herring, in the order appealed from, found that defendant was not competent to stand trial and that defendant was not subject to inpatient involuntary commitment. Judge Herring granted defendant's motion for conditional pretrial release. The conditions required that defendant be released to the custody of his former wife and, citing the inherent power of the court, further required that DAPP supervise defendant's release by making weekly observations of him and his compliance with the conditions of his probation, reporting any noncompliance and making monthly written reports to the court. The Durham office of DAPP notified the court that it was not able to consent to such supervision, citing lack of statutory authority to supervise pretrial detainees, workload conditions, and

---

1. Subsequent to the oral arguments, defendant filed a motion for clarification of the record for the purpose of correcting a misstatement made during the argument. We have noted the correction.

potential liability, and filed the petitions hereinabove referred to. We find no statutory or inherent authority of the court which authorizes a judge of the superior court to order DAPP to supervise the conditional probation of a pretrial detainee, and we therefore vacate Judge Herring's modified order of 5 March 1990.

The pertinent facts upon which our review of Judge Herring's order arose are as follows: On 1 February 1987, defendant was charged with two counts of first-degree murder for killings which occurred on that date. Two days later, on motion of defendant's counsel, defendant was sent to Dorothea Dix Hospital pursuant to N.C.G.S. § 15A-1002 for an evaluation of his competency to stand trial. Later in the same calendar year, on 16 December 1987, defendant was again sent to Dix Hospital for another examination for the same purpose. Subsequently, about three months later, after hearing testimony and arguments of counsel, Judge F. Gordon Battle entered an order declaring defendant incompetent to proceed to trial; ordering that involuntary commitment proceedings be commenced in the district court; and providing that if defendant was not committed or was released from a hospital, he was to be returned to the custody of the Sheriff of Orange County.

On 1 June 1987, the Orange County grand jury returned bills of indictment charging defendant with two counts of first-degree murder for the same alleged offenses.

As a result of the involuntary commitment hearing in the district court, defendant was involuntarily committed to John Umstead Hospital on 23 March 1988 and was released from that hospital on 5 July 1988, having been found to be mentally ill but not dangerous to himself or others. Defendant was returned to the custody of the Sheriff of Orange County, and on 7 July 1988, defendant's counsel made a motion and again obtained an order committing defendant to Dix Hospital to determine defendant's capacity to proceed. It was again found that defendant lacked the capacity to proceed to trial, and defendant was again returned to the custody of the Orange County jail. On 7 December 1988, Judge Robert L. Farmer again ordered defendant returned to Dix Hospital for another evaluation of his capacity to proceed to trial. On 3 January 1989, defendant was again discharged and returned to custody in the Orange County jail with a finding for the third time that defendant lacked the capacity to proceed to trial.

STATE v. GRAVETTE

[327 N.C. 114 (1990)]

Within a month of this third finding, defendant was, on 12 January 1989, again committed to Dix Hospital for an evaluation as to whether he was mentally ill and whether he was dangerous to himself or others. On 9 February 1989, defendant was again found not dangerous to himself or others and was returned to the Orange County jail.

On 7 April 1989, Judge B. Craig Ellis entered an order upon defendant's motion for conditional release, placing him in the custody of his former wife and ordering supervision by the Durham County office of DAPP. This order was stayed following notification by defendant's former wife that she could not assume custody of defendant at that time.

On 8 June 1989, defendant again moved for conditional release, which was denied. Defendant appealed from the denial of that order to the Court of Appeals. That appeal is still pending.

On or about 12 January 1990, Judge Lowry Betts of the Orange County District Court held an involuntary commitment hearing, found that defendant was mentally ill, and committed defendant to outpatient treatment under chapter 122C of the General Statutes.

On 19 January 1990, defendant made another application for conditional release before Judge D.B. Herring. This application was granted, and defendant was again placed in the custody of his former wife. In addition, the Durham office of DAPP was ordered to supervise defendant as a pretrial detainee and to make written reports to the court as to the matters specified therein. The Court of Appeals was notified by defendant of his success in obtaining conditional release approximately one month later. The initial order by Judge Herring was recited as having been taken pursuant to N.C.G.S. § 15A-1004(b), which requires that the person or persons into whose custody defendant is placed under that provision must consent to such placement. Shortly thereafter, the Durham office of DAPP notified the court that it was not able to consent to such supervision, citing lack of statutory authority to supervise pretrial detainees, regular workload considerations, and potential liability for any such voluntary undertaking. As a result of this notification, on 5 March 1990, Judge Herring modified the original order, deleting the reference to specific statutory authority but continuing the original mandate to the Durham office of DAPP. He cited as authority for this order the inherent power of the court.

As recited in Judge Herring's order, it is unlikely that defendant will ever become competent to stand trial. The court further found that the District Attorney of Orange County had expressed no interest in dismissing the case pursuant to N.C.G.S. § 15A-1004. Judge Herring declined to dismiss the case pursuant to N.C.G.S. § 15A-1008(1) upon a finding that outpatient involuntary commitment would not provide the necessary supervision of the defendant due to potential alcohol consumption and failure to take stabilizing medication.

We find it unnecessary to publish here Judge Herring's thorough and lengthy modified order but will quote or characterize those portions of it necessary to our analysis of its contents.

The modified order makes findings that "unless the Court takes some action in this matter, defendant will remain indefinitely in a crowded Orange County jail," that the defendant's former wife is willing to assume twenty-four-hour supervision of defendant, that defendant has adequate income, and that DAPP "can assist in carrying out the Court's order by assigning a probation/parole officer to inquire, investigate, and observe the defendant's status while he's in the custody of [his former wife] and to file reports with the Court as may be desired."

As a result, the Durham office of DAPP was ordered, *inter alia*:

a) To make weekly routine observations of the defendant, with or without notice, at the residence of [his former wife] . . . , with reference to the requirements of Paragraphs "First" through "Eighth" [the supervision provided by her; defendant's access to alcohol, firearms, and motor vehicles; his outpatient treatment and the taking of ordered medications; and defendant's whereabouts] as above set out;

b) To report immediately, by the quickest means, to be followed by written report to the Orange County Clerk of any non-compliance with the requirements of Paragraphs "First" through "Eighth", or any other condition that may be a danger to others;

c) To make monthly written reports of defendant's status to the Court not later than the 10th day of each consecutive calendar month beginning in April, 1990, to be mailed to the Orange County Clerk of Superior Court[.]

[1] It is with this last quoted portion of the order that DAPP takes issue. Thus, the question presented is whether a judge of the superior court has either statutory or inherent authority to compel DAPP, without its consent, to supervise the conditional release of a pretrial detainee who has not been tried or convicted because of his lack of capacity to proceed to trial. We conclude that he does not.

Judge Herring recites as consideration for the order at issue here "Section 205 of Chapter 15, Articles 23 and 56 of Chapter 15A; and Part 7, Article 5 of Chapter 122C."

N.C.G.S. § 15-205 sets forth the duties and powers of a probation officer in "all cases referred to him for investigation by the judges of the courts or by the Secretary of Correction." N.C.G.S. § 15-205 (1983). While this language might appear to support the order entered, it is clear from the remaining provisions that DAPP is so empowered only in cases in which the defendant has been or is to be *sentenced* following a judgment of conviction or plea of guilty. Article 20, in which this provision is found, is entitled "Suspension of Sentence and Probation." N.C.G.S. § 15-205 itself continues with repeated references to *probation*, which is a particular circumstance of actual or anticipated sentencing or formal deferred prosecution. Thus, this provision refers only to the power to investigate on behalf of the court the advisability of placing the defendant on probation.

Article 82 of chapter 15A (N.C.G.S. §§ 15A-1341 to -1347 (1988 and Cum. Supp. 1989)), entitled "Probation," makes it manifest that this form of supervision is available only upon conviction of crime. N.C.G.S. § 15A-1341 states in pertinent part:

*A person who has been convicted* of any non-capital criminal offense not punishable by a minimum term of life imprisonment or a minimum term without benefit of probation may be placed on probation as provided by this Article. *A person who has been charged with a criminal offense not punishable by a term of imprisonment greater than 10 years* may be placed on probation as provided in this Article on motion of the defendant and the prosecutor if the court finds each of the following facts:

(1) *Prosecution has been deferred* by the prosecutor pursuant to written agreement with the defendant, with

the approval of the court, for the purpose of allowing the defendant to demonstrate his good conduct.

(2) Each known victim of the crime has been notified of the motion for probation by subpoena or certified mail and has been given an opportunity to be heard.

(3) The defendant has not been convicted of any felony or of any misdemeanor involving moral turpitude.

(4) The defendant has not previously been placed on probation and so states under oath.

(5) The defendant is unlikely to commit another offense punishable by a term of imprisonment greater than 30 days.

N.C.G.S. § 15A-1341(a) (1988) (emphasis added). Clearly, this provision does not apply to the situation *sub judice*, as the defendant has not been convicted of a crime and the offenses with which he is charged do not qualify for deferred prosecution.

Article 23 of chapter 15A was apparently cited to in error, as it is inapposite. It relates entirely to the processing by the police of a defendant following arrest. It is likely that the trial judge intended to refer to article 26. N.C.G.S. § 15A-534 of article 26 does permit the court to place a pretrial detainee "in the custody of a designated person or organization *agreeing* to supervise him." N.C.G.S. § 15A-534(a)(3) (Cum. Supp. 1989) (emphasis added). The order in question places custody with the former wife, not DAPP, and while defendant's former wife has agreed to supervise defendant, DAPP has not and has specifically declined to do so. Had the Durham DAPP office agreed to this placement, the State readily concedes that the order in question in this case would have been lawful. Pretrial release is entirely a creature of statute; as such, the authorizing statute must be followed.

Article 56 of chapter 15A is entitled "Incapacity to Proceed" and includes N.C.G.S. § 15A-1004, which is the specific provision dealing with defendant's situation, that is, one who is incompetent to stand trial and yet not subject to involuntary commitment. That statute also provides that the defendant may be placed "in the custody of a designated person or organization *agreeing* to supervise him." N.C.G.S. § 15A-1004(b) (1988) (emphasis added). This statute was the articulated statutory foundation of Judge Herring's

original order. The Durham probation office declined to undertake such supervision. In its brief filed with this Court, the State notes that it was not mere recalcitrance which motivated the Durham probation office to decline this undertaking. The order in question mandates an even higher level of supervision and reporting than is normally undertaken in most probation cases. In addition to that office's concerns with respect to its workload, it was apprehensive as to the potential for civil liability were it to engage in such a voluntary undertaking in the absence of statutory authority and given the background and implicit potential for harm to others in this particular case. After the Durham office of DAPP declined to undertake the duties assigned to it in the order, the order was modified to articulate the "inherent power" of the court.

Finally, part 7, article 5 of chapter 122C (N.C.G.S. §§ 122C-261 to -277 (1989) ) deals with involuntary commitment only. The defendant has repeatedly been found not subject to such commitment, therefore those statutes likewise provide no authority for Judge Herring's order. N.C.G.S. § 122C-271 does make provision for outpatient commitment if it is found

> by clear, cogent, and convincing evidence that the respondent is mentally ill; that he is capable of surviving safely in the community with available supervision from family, friends, or others; that based on respondent's treatment history, the respondent is in need of treatment in order to prevent further disability or deterioration that would predictably result in dangerousness as defined in G.S. 122C-3(11); and that the respondent's current mental status or the nature of his illness limits or negates his ability to make an informed decision to seek voluntarily or comply with recommended treatment, it may order outpatient commitment for a period not in excess of 90 days.

N.C.G.S. § 122C-271(a)(1) (1989).

While this provision may facially appear applicable to defendant, the only reference to a possible outpatient commitment that is apparent on the documents available to the State at this time is the abortive attempt of District Court Judge Betts to place defendant on that status on 12 January 1990. That order was made subject to Judge Battle's order of 22 March 1988 ordering involuntary commitment proceedings. It is not clear from the record why defendant did not remain on outpatient commitment.

STATE v. GRAVETTE

[327 N.C. 114 (1990)]

It is clear, however, that defendant is not on outpatient commitment at this time. Otherwise, there would have been no need to order the Durham County Mental Health Center to supervise defendant "as if defendant were involuntarily committed for outpatient treatment."

N.C.G.S. § 122C-277(b) is the specific provision setting forth the procedure for dealing with one such as defendant initially committed for violent crime and found incapable of proceeding and not committed as an inpatient. It merely mandates a hearing pursuant to the above provision and contains no authority for the actions taken in this case.

None of the statutes referred to in the order provide any specific authority for the order as entered nor do any of them imply such authority. The only powers implied or reasonably inferred from a statute are those essential to effectuate its terms. As noted by Judge Mallard, quoting Black's Law Dictionary 1334 (rev. 4th ed. 1968):

"Implied powers are such as are necessary to make available and carry into effect those powers which are expressly granted or conferred, and which must therefore be presumed to have been within the intention of the constitutional or legislative grant."

Mallard, *Inherent Power of the Courts of North Carolina*, 10 Wake Forest L. Rev. 1, 12 (1974). "[T]he power a court possesses only by virtue of a statutory grant is not an inherent power." 20 Am. Jur. 2d *Courts* § 78 (1965); *see also Beard v. N.C. State Bar*, 320 N.C. 126, 357 S.E.2d 694 (1987). It does not appear that the applicability of chapter 35A of the General Statutes (entitled "Incompetency and Guardianship") to the defendant's situation was ever explored.

[2] We now turn to the question of the inherent authority of a judge of the superior court to enter the order in question. By entering its amended order to rely upon the inherent power of the court, the trial court essentially conceded that the existing statutes did not provide authority for the portion of the order in question.

As an alternative to the statutory grounds discussed above, the court predicated its order on "the exercise of its inherent power." In support of this position, the court recited in its order:

And the Court having no arm or agency of its own to assist in insuring its orders are complied with or to insure public safety in this unusual situation, the Court finds that *in the exercise of its inherent power and authority* in the interest of justice and public safety, it is necessary and reasonable to order a state agency to assist in the carrying out of its order and that the North Carolina Adult Probation and Parole offices are peculiarly equipped and trained to perform their [sic] requirements contemplated by this order . . . .

(Emphasis added.)

Section 1 of article II of the North Carolina Constitution vests the legislative power of the state in the General Assembly. It is the function of that body, exercising the police power of the state, to "legislate for the protection of the public health, safety, morals and general welfare of the people." *Martin v. Housing Corp.,* 277 N.C. 29, 45, 175 S.E.2d 665, 674 (1970). As discussed above, that body has provided for pretrial assignment of a defendant to DAPP only upon deferred prosecution, N.C.G.S. § 15A-1341 (1988), and upon the *agreement* to assume supervision of the person, N.C.G.S. § 15A-534(a)(3) (1988).

However inadequate this provision may be to meet the perceived needs of the defendant, for good or ill, it is not the prerogative of the superior court to amend it.

We are advertent to the dilemma in which the trial court found itself. The record before the court indicated that defendant would probably never be competent to stand trial, nor was he subject to inpatient care. Yet, he had been found to be functionally impaired; and, unless supervision, treatment, and medication could be maintained, he was subject to future violence perhaps as serious as the crimes with which he was charged. The trial court no doubt felt that it had no alternative but to fashion an appropriate remedy to do justice to the defendant and to protect the public. In effect, the trial court crafted a new form of pretrial release.

In a number of cases in recent years involving juvenile matters, our trial judges have found themselves in a similar dilemma because of the lack of statutory commitment and treatment alternatives. In those cases, the judges attempted to craft alternatives predicated on either the implied or inherent power of the court. In each such case, the judge was found to have erred.

.

STATE v. GRAVETTE

[327 N.C. 114 (1990)]

In *In re Swindell*, 326 N.C. 473, 390 S.E.2d 134 (1990), the trial court ordered treatment and rehabilitation for a sexually abusive juvenile delinquent. This Court held that "the courts must make do with what is currently provided by the General Assembly." *Id.* at 475, 390 S.E.2d at 136. In *In re Wharton*, 305 N.C. 565, 290 S.E.2d 688 (1982), the county department of social services was ordered to create a foster home for a juvenile lacking the capacity to stand trial. This Court reversed, holding that "[w]hile matters implied by the language of statutes must be given effect to the same extent as matters specifically expressed, the court may not, under the guise of judicial interpretation, interpolate provisions which are lacking." *Id.* at 574, 290 S.E.2d at 693 (citations omitted). In *In re Brownlee*, 301 N.C. 532, 272 S.E.2d 861 (1981), a juvenile delinquent was ordered to be placed in a Texas treatment program. This Court was "unable to conclude that the General Assembly intended to vest [the trial judge] with the authority which he sought to exercise in this case." *Id.* at 555, 272 S.E.2d at 875. In *In re Jackson*, 84 N.C. App. 167, 352 S.E.2d 449 (1987), a school board was ordered to present a plan to meet the needs of a juvenile expelled from school. The Court of Appeals conceded that there was an "overwhelming lack of reasonable alternatives for effective placement" but held that "[h]owever regrettable the existence of this void, a court may not overcome it by fiat." *Id.* at 176-77, 352 S.E.2d at 455.

As in the juvenile cases, we find no inherent authority of the superior court to order DAPP to provide services not specified and, at least by implication, intentionally omitted from the grant of authority to DAPP in N.C.G.S. § 15A-534(a)(3). "[T]he inherent powers of a court do not increase its jurisdiction but are limited to such powers as are essential to the existence of the court and necessary to the orderly and efficient exercise of its jurisdiction." *Hopkins v. Barnhardt*, 223 N.C. 617, 619-20, 27 S.E.2d 644, 646 (1943). In order for a court's power to be inherent, "it must be such as is reasonably necessary for the exercise of its proper function and jurisdiction in the administration of justice and such as is not granted or denied to it by the Constitution or by a constitutionally enacted statute." Mallard, *Inherent Power of the Courts of North Carolina*, 10 Wake Forest L. Rev. 1, 13 (1974).

As laudable as its objective was, the trial court simply lacked the authority to impose the supervisory functions in question upon DAPP. The order of Herring, J., entered 5 March 1990, requiring

DAPP, without its consent, to provide supervision of defendant while in custody of his former wife is vacated. The case is remanded to the Superior Court, Orange County, for further proceedings not inconsistent with this opinion.

Vacated and remanded.