IN RE: D.R.D., D.O.B.: May 4, 1983

No. COA96-1054

(Filed 19 August 1997)

**1. Infants or Minors § 128 (NCI4th)— juvenile delinquent— appropriate treatment—secondary liability of county—due process**

A county which was found to be secondarily liable for the appropriate treatment of a twelve-year-old juvenile adjudicated delinquent for committing a second-degree sexual offense was not denied due process where the court subsequently allowed the county to intervene, afforded it the opportunity to present evidence and to be heard, and modified the original order.

**2. Infants or Minors § 128 (NCI4th)— juvenile delinquent— cost of private care—existing institution**

The trial court did not err in ordering defendant Stokes County to pay the costs of private treatment for a juvenile who was adjudicated delinquent for committing a second-degree sexual offense where, unlike *In re Wharton*, 305 N.C. 565, the court ordered that the care be given in an existing private institution after considering alternative programs and their relative costs. N.C.G.S. § 7A-647(3).

**IN RE D.R.D.**

[127 N.C. App. 296 (1997)]

Appeal by Intervenor Stokes County from an order entered 10 May 1996 by Judge Otis M. Oliver in Stokes County District Court. Heard in the Court of Appeals 12 May 1997.

*Browder & McGrath, P.A., by John L. McGrath, for Intervenor-appellant Stokes County.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General John R. Corne and Assistant Attorney General V. Lori Fuller, for the State.*

*Jeffrey S. Lisson, attorney for respondent-appellee.*

McGEE, Judge.

On 9 February 1996, a twelve-year-old juvenile was adjudicated delinquent during the Juvenile Session of Stokes County District Court for committing a second degree sexual offense. On 23 February 1996 the juvenile's dispositional hearing was held. Rusty Slate (Slate), the juvenile court counselor with the District 17-B Court Counselor's Office, who had been involved in the juvenile's case since 22 September 1995, testified that residential treatment was appropriate for the juvenile and after investigating alternative treatment programs, an inpatient residential sex offender treatment program at Charter Hospital in Winston-Salem was the only appropriate alternative he had found to training school. Charter Hospital would not accept the juvenile without a court order stating that Stokes County would pay the $340.00 a day cost of treatment for the estimated period of treatment of one year.

After hearing Slate's testimony the trial court made the following findings of fact:

6. Based upon the Juvenile Court Counselor's review of the charges, psychiatric records of a prior inpatient stay at Charter Hospital . . . and interviews with the parents and law enforcement, the only appropriate disposition for the Juvenile is some form of inpatient, residential sex offender treatment.

7. All sex offender treatment programs have a cost which far exceeds the ability of the parents to pay.

8. Based upon the court counselor's investigation of public assistance, private insurance, and other sources of funding, no funds are available to pay for the treatment which the Juvenile requires.

**IN RE D.R.D.**

[127 N.C. App. 296 (1997)]

9. The only parent available to pay for treatment is the juvenile's mother, Brenda Zrinski, who works at a Hardee's Restaurant and barely earns enough to pay her own monthly expenses. She has no medical or health insurance of her own. The Juvenile's father is incarcerated in state prison.

. . .

13. The Court finds as a fact that the only alternative to commitment to a state training school is the program recommended by the court counselor. The Court further finds that training school is not an appropriate alternative at this time, as there is a community-based alternative available. No other community-based alternatives are available other than the program recommended by the court counselor.

. . .

17. All other treatment programs which the court counselor has investigated have equal impediments to the Juvenile's entry, in that insurance, state Medicaid, or other funds will not pay for the programs, and the parents likewise will not be able to pay those costs.

18. No other community-based alternatives are available.

Based upon these findings of fact, the trial court made the following conclusions of law:

2. Brenda Zrinski is the natural mother of [the juvenile], and is primarily responsible for his care and needs, and further is responsible for any costs of medical/psychological and psychiatric treatment. Mike Zrinski, the stepfather of the Juvenile, is not legally obligated to support the Juvenile.

3. The sex offender treatment program at Charter Hospital in Winston-Salem, North Carolina, is the appropriate community-based alternative to training school for the Juvenile, and is the only appropriate community-based alternative for the Juvenile.

4. Training school is not an appropriate alternative for the Juvenile at this time.

5. Stokes County, North Carolina, is subject to the Court ordering that it pay the expenses of the Juvenile for treatment which the Court hereby finds to be necessary and appropriate.

**IN RE D.R.D.**

[127 N.C. App. 296 (1997)]

The trial court then ordered:

2. The Juvenile shall enter and successfully complete the residential sex offender treatment program at Charter Hospital in Winston-Salem, North Carolina.

. . .

5. The Juvenile's parents are primarily responsible for payment of the costs of the hospital program.

6. Stokes County, North Carolina, shall be secondarily liable to pay the costs of the Charter Hospital program, $340.00 per day, if the parents are unable to pay and no insurance or other programs are available to pay those costs.

On 6 March 1996 Stokes County (County) filed a motion to intervene which was granted on 26 March 1996. On 1 April 1996 the County filed a motion to modify and motion for relief from the 23 February 1996 order. The motion stated six reasons why the trial court's order for the County to pay in excess of $124,000 per year for the juvenile's hospital stay was error. After hearing evidence from the County and a representative from the Forsyth/Stokes Mental Health Department, the trial court denied the motion for relief and modified its existing order on 10 May 1996. The modified order provided that "Forsyth/Stokes Mental Health will develop a plan of treatment and mobilize [its] resources to meet the Juvenile's needs and to implement [its] plan to provide intensive sex offender's specific residential treatment, as needed." It effectively gave the Forsyth/Stokes Mental Health agency the authority to assume care of the juvenile when they had an adequate program in place to meet his needs.

This case is governed by N.C. Gen. Stat. § 7A-647(3) (1981). The version of the statute in effect when this action was heard stated in pertinent part:

If the judge finds the juvenile to be in need of medical, surgical, psychiatric, psychological or other treatment, he shall allow the parent or other responsible persons to arrange for care. If the parent declines or is unable to make necessary arrangements, the judge may order the needed treatment, surgery or care, and the judge may order the parent to pay the cost of such care pursuant to [N.C.G.S. § 7A-650]. If the judge finds the parent is unable to pay the cost of care, the judge may charge the cost to the county.

IN RE D.R.D.

[127 N.C. App. 296 (1997)]

[1] The County first argues it was denied due process in violation of the Fourteenth Amendment when it was not given notice and an opportunity to be heard in the proceeding in which the trial court ordered that the County pay the juvenile's hospital expenses. We disagree. Assuming *arguendo* that the County had a constitutional right to notice and a hearing in this case, the trial court did afford the County the opportunity to be heard when the court allowed the County to intervene in the action on 5 March 1996, and further allowed the County to present evidence in a 29 April 1996 hearing. After hearing the County's evidence, the trial court modified its original dispositional order. The amended order directs the Forsyth/Stokes Mental Health Department to "develop a plan of treatment and mobilize it's [sic] resources to meet the Juvenile's needs and to implement it's [sic] plan to provide intensive sex offender's specific residential treatment, as needed: development of a step-down plan to a high or moderate level management as deemed appropriate by a good clinical judgment." The trial court's amended order clearly provides for further modification of the juvenile's treatment plan on an "as needed basis." The County had notice and the opportunity to be heard. Thus, we hold that the County's Fourteenth Amendment rights were not violated.

We note the General Assembly also recognized the need for participation by counties in the dispositional stage and amended N.C.G.S. § 7A-647(3) to require the trial judge to notify a representative of the county and provide the representative an opportunity to be heard at the juvenile's dispositional hearing, effective 1 December 1996 and applicable to dispositions for offenses committed on or after that date.

[2] Next, the County cites *In re Wharton*, 305 N.C. 565, 290 S.E.2d 688 (1982), for the proposition that the trial court did not have the authority to require a county to pay the costs of the Charter Hospital Program under N.C. Gen. Stat. § 7A-647(3). We disagree. In *Wharton*, the trial court ordered a county department of social services, in conjunction with another state agency, to "implement the creation of a foster home" and provide for its maintenance to meet the needs of one specific juvenile, and others like him. 305 N.C. 565, 570, 290 S.E.2d 688, 689. Our Supreme Court reversed this order, holding that although N.C.G.S. § 7A-646 "affords the [trial] court considerable flexibility 'to design an appropriate plan to meet the needs of the juvenile,' " it did not authorize the trial court "to direct a county or any of its agencies to spend large sums of money in the acquisition of

real estate, either by purchase or lease, in the equipping and furnishing of the property, and in employing personnel" to provide for a particular juvenile. *Wharton,* at 574, 290 S.E.2d at 693. Rather than creating a new institution as the trial court attempted in *Wharton,* the trial court in this case ordered the County to pay the costs of a juvenile's care in an existing institution after considering all alternative programs presented to the court and their relative costs. We hold that the trial court was acting within the scope of N.C. Gen. Stat. 7A-647(3) which authorizes a trial court to "order the needed treatment, surgery or care" for the juvenile and thus affirm the trial court's order.

Affirmed.

Judges EAGLES and SMITH concur.