TOWN OF BEECH MOUNTAIN, ELLEN ANDERSON, CARL T. BROWNING AND WIFE, MARTHA BROWNING, JOHN W. EARNHARDT AND WIFE, PATRICIA W. EARNHARDT, GEORGE E. HANDLEY, JR. AND WIFE, KATHLEEN HANDLEY, DOUGLAS W. JACKSON AND WIFE, MARY LOU E. JACKSON, EDWARD L. McKINZIE AND WIFE, JACQUELINE S. McKINZIE, AND W. K. MIMS AND WIFE, FRANCES G. MIMS v. COUNTY OF WATAUGA, JAMES G. COFFEY, CARL FIDLER, LARRY STANBERRY, JAY L. TEAMS, DAVID J. TRIPLETT, AS COMMISSIONERS OF WATAUGA COUNTY, AND HELEN A. POWERS, SECRETARY, N.C. DEPARTMENT OF REVENUE, AND C. C. CAMERON, BUDGET OFFICER FOR THE STATE OF NORTH CAROLINA

No. 409A88

(Filed 4 May 1989)

1. **Constitutional Law § 20— per capita distribution of sales and use tax—nonresident property owners—strict scrutiny test not appropriate**

   The strict scrutiny test for resolving equal protection claims was not applicable to an action in which plaintiffs alleged that per capita distribution of sales and use tax revenues created an arbitrary distinction between those who

reside in Watauga County for more than six months of the year and those who reside primarily out of state or in other counties. Out-of-county and out-of-state property owners have clearly suffered no oppression or disadvantage meriting particular consideration from the judiciary and display none of the traditional indicia of a suspect class. There is no interference with a fundamental right in that the per capita revenue distribution method cannot be said to inhibit free interstate migration or to significantly burden the right to travel since all Beech Mountain property owners are equally affected.

**2. Constitutional Law § 20; Taxation § 15— per capita revenue distribution—rational relationship test—constitutional**

The per capita distribution of sales and use tax revenues based on a six-month residence test did not violate equal protection under the rational relationship test in that the legislature could reasonably have determined that individuals dwelling within a particular municipality for more than six months of the year would be likely to purchase more items of tangible personal property than would individuals primarily residing elsewhere.

**3. Constitutional Law § 19.1— per capita revenue distribution—nonresident property owners—no violation of privileges and immunities clause**

Per capita distribution of sales and use tax revenues did not violate the privileges and immunities clause in the federal constitution in that Beech Mountain property owners who maintain their primary residence elsewhere are treated no differently from property owners who reside in Beech Mountain year-round.

APPEAL by plaintiffs pursuant to N.C.G.S. § 7A-30(1) from a decision of the Court of Appeals, 91 N.C. App. 87, 370 S.E. 2d 453 (1988), affirming order granting defendants' motion to dismiss by *Lamm, J.*, at the 7 December 1987 session of Superior Court, WATAUGA County. Heard in the Supreme Court 14 February 1989.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Michael K. Curtis, for plaintiff-appellants.*

*Eggers, Eggers & Eggers, by Stacy C. Eggers III, and Womble Carlyle Sandridge & Rice, by Anthony H. Brett and Jean Schulte Scott, for Watauga County and Watauga County Board of Commissioners, defendant-appellees.*

*Lacy H. Thornburg, Attorney General, by Newton G. Pritchett, Jr., Assistant Attorney General, for Helen A. Powers, Secretary N.C. Department of Revenue, and C. C. Cameron, Budget Officer of the State of North Carolina, defendant-appellees.*

MARTIN, Justice.

On this appeal plaintiffs raise various constitutional challenges to the per capita distribution under N.C.G.S. § 105-472 of Watauga County's sales and use tax revenues. We hold that per capita distribution offends neither the state constitution nor the federal constitution and, accordingly, we affirm the Court of Appeals.

Plaintiffs in this action are the Town of Beech Mountain and certain individuals who own residential property within the town's boundaries. Plaintiff property owners include full-time residents of the town, and residents of other North Carolina counties and other states who own vacation property within the town. They filed this action seeking (1) an injunction to prohibit the county from distributing tax revenues on a per capita basis, and (2) a declaratory ruling determining that the per capita allocation of tax revenues is unconstitutional.

The trial court, pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, dismissed the complaint for failure to state a claim upon which relief could be granted. The Court of Appeals affirmed, unanimously holding that the per capita method of distribution did not violate plaintiffs' constitutional rights.

The statutory scheme at issue directs the board of county commissioners in each taxing county to determine in April of each year the method of distribution to be used for local sales and use tax revenues during the following fiscal year. N.C.G.S. § 105-472 (Cum. Supp. 1988). The statute lists two options: the ad valorem method and the per capita method.

The ad valorem method allocates revenues to each municipality based upon the percentage that the ad valorem taxes levied in a municipality bears to the total county ad valorem tax levy. *Id.* The per capita method, on the other hand, allocates to each municipality a percentage of the tax revenues equal to the percentage of the county population that the municipal population represents. *Id.*

Under the per capita method, a town's population is determined by calculating the number of individuals residing there for more than six months of the year. According to the complaint, 98 percent of Beech Mountain's property owners maintain their pri-

mary residence elsewhere. Thus, although plaintiffs allege that at the peak of the tourist season up to 15,000 people may actually dwell in Beech Mountain on any given day, only 239 of these individuals are considered residents for purposes of determining town population under the per capita distribution method.

For the fiscal years up to and including 1986-87, Watauga County distributed its tax revenues on an ad valorem basis. For the fiscal year 1987-88, however, the County shifted to the per capita method. Plaintiffs allege that this change resulted in a 93 percent decrease in the sales tax revenues distributed to Beech Mountain, forcing the municipality to raise city taxes and reduce services. For this reason they seek to overturn the authorizing statute on constitutional grounds.

[1] Plaintiffs first argue that the per capita or "population" method of revenue distribution denies them equal protection under both the federal and state constitutions by creating an arbitrary distinction between those who reside in Watauga County more than six months of the year and those who reside primarily out-of-state or in other North Carolina counties. We find no merit to this assertion.

Courts traditionally employ a two-tiered analysis to resolve equal protection claims. *Texfi Industries v. City of Fayetteville,* 301 N.C. 1, 269 S.E. 2d 142 (1980). When a legislative act operates to the disadvantage of a suspect class or interferes with the exercise of a fundamental right, the upper tier or "strict scrutiny" standard is applied, requiring the government to demonstrate that the challenged statutory classification is necessary to promote a compelling governmental interest. When the claim involves neither a suspect class nor a fundamental right, the lower tier or "rationality" standard is employed. Under this standard, the government need only show that the challenged classification bears some rational relationship to a legitimate governmental interest. *Id.*

In determining the appropriate standard of review in this particular case, we first consider whether the per capita method of revenue distribution operates to the disadvantage of a suspect class. The United States Supreme Court defines a suspect class as one which has been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to

such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio School District v. Rodriguez*, 411 U.S. 1, 28, 36 L.Ed. 2d 16, 40, *reh'g denied*, 411 U.S. 959, 36 L.Ed. 2d 418 (1973).

Plaintiffs gamely attempt to characterize property owners primarily residing out-of-county or out-of-state as a politically powerless underclass. For obvious reasons, however, we decline to recognize nonresident individuals owning second homes in North Carolina resort areas as a downtrodden minority. Such a group has clearly suffered no oppression or disadvantage meriting particular consideration from the judiciary and displays none of the traditional indicia of a suspect class.

Nor do we find that plaintiffs have been denied the exercise of a fundamental right. Plaintiffs suggest that the increase in taxes and reduction in services occasioned by the per capita distribution method discourages citizens of other counties and states from purchasing property in Beech Mountain, thereby violating their right to travel.

The right to travel protects the federal interest in free interstate migration. *Shapiro v. Thompson*, 394 U.S. 618, 22 L.Ed. 2d 600 (1969). Although the right to travel is considered a fundamental right, *Jones v. Helms*, 452 U.S. 412, 69 L.Ed. 2d 118 (1981), restrictions based on residency do not warrant strict scrutiny merely because they impinge to some limited extent on its exercise. *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 39 L.Ed. 2d 306 (1974). Only those statutory classifications which so burden the right to travel that they function, in effect, as *penalties* upon those migrating to a new state are subject to the strict scrutiny test. *E.g.*, *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 39 L.Ed. 2d 306 (one-year residency requirement to receive indigent medical care); *Dunn v. Blumstein*, 405 U.S. 330, 31 L.Ed. 2d 274 (1972) (one-year residency requirement to exercise right to vote); *Shapiro v. Thompson*, 394 U.S. 618, 22 L.Ed. 2d 600 (one-year residency requirement to receive welfare benefits).

Here the per capita revenue distribution method authorized by the statute does not rise to the level of a penalty upon nonresidents. All Beech Mountain property owners—resident and nonresident alike—are equally affected by this method of distribution. Nothing in the record indicates that Beech Mountain's nonresi-

dent property owners pay higher taxes, receive fewer services, or are otherwise treated differently from its resident property owners. Therefore, the statute cannot be said to inhibit free interstate migration or to significantly burden the right to travel.

[2] Because we conclude that the statute neither operates to the disadvantage of a suspect class nor interferes with the exercise of a fundamental right, we need not apply the strict scrutiny test. Instead, we focus our inquiry on whether the statute bears a rational relationship to a conceivably legitimate governmental objective. Generally speaking, this rationality test is the appropriate standard to apply to purely economic regulations such as those governing the sales and use tax. *In re Assessment of Taxes Against Village Publishing Corp.*, 312 N.C. 211, 322 S.E. 2d 155 (1984), *appeal dismissed*, 472 U.S. 1001, 86 L.Ed. 2d 710 (1985).

Under the rationality standard of review, "[s]tate legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality." *McGowan v. Maryland*, 366 U.S. 420, 425-26, 6 L.Ed. 2d 393, 399 (1961). As long as there exists a reasonable basis for the disputed classification, this Court will not interfere with the legislature's decision. *Powe v. Odell*, 312 N.C. 410, 322 S.E. 2d 762 (1984).

Plaintiffs insist that per capita revenue distribution is not rationally related to a legitimate state interest. We disagree. The legislature could reasonably have determined that individuals dwelling within a particular municipality for more than six months of the year would be likely to purchase more items of tangible personal property than would individuals primarily residing elsewhere. Thus, as the Court of Appeals aptly concluded, "[t]he per capita method of distribution provides a reasonable means of returning revenues in an amount proportionate to those from whom they were collected." *Town of Beech Mountain v. County of Watauga*, 91 N.C. App. 87, 91, 370 S.E. 2d 453, 455 (1988). Providing a means of allocating revenues among the municipalities of a county is a legitimate governmental objective. Plaintiffs have failed to allege facts sufficient, if proven, to overcome the presumption of constitutionality.

[3] Plaintiffs next contend that per capita revenue distribution violates the privileges and immunities clause of the federal con-

stitution. This argument, too, is meritless. The privileges and immunities clause "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Toomer v. Witsell*, 334 U.S. 385, 395, 92 L.Ed. 1460, 1471, *reh'g denied*, 335 U.S. 837, 93 L.Ed. 389 (1948). As previously noted, Beech Mountain property owners who maintain their primary residence elsewhere are treated no differently from property owners who reside in Beech Mountain year-round. The statute contains no impermissible distinction based on state citizenship. The privileges and immunities clause is simply not implicated in this case.

Because plaintiffs are not entitled to relief under any state of facts which could be proved in support of their claim, dismissal for failure to state a claim upon which relief could be granted was proper. *St. Paul Fire & Marine Ins. Co. v. Freeman-White Assoc., Inc.*, 322 N.C. 77, 366 S.E. 2d 480 (1988).

The decision of the Court of Appeals is hereby

Affirmed.