CHARLES FRANKLIN FULLER, PLAINTIFF v. MICHAEL F. EASLEY, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF NORTH CAROLINA, HARLAN E. BOYLES, IN HIS OFFICIAL CAPACITY AS STATE TREASURER OF NORTH CAROLINA, ET. AL., DEFENDANTS

No. COA00-922

(Filed 7 August 2001)

**1. Constitutional Law— standing—taxpayer suit—use of public funds for public service announcements by candidate**

The trial court did not err by dismissing for lack of standing an action by a taxpayer alleging that the Attorney General had improperly used damages collected for unfair and deceptive

trade practices to fund public service messages while running for governor. An individual taxpayer has no standing to bring a suit in the public interest, but may bring a suit if he can demonstrate that a tax is unconstitutional, that the challenged provision will cause him to personally sustain a direct and irreparable injury, or that he is a member of the class prejudiced by the operation of a statute.

## 2. Constitutional Law— standing—taxpayer suit—use of lawsuit proceeds by Attorney General

A taxpayer lacked standing to bring an action under N.C. Const. art. IX, § 7 against the Attorney General arising from public service announcements while the Attorney General was running for governor where plaintiff failed to allege that any board of education refused to bring an action to recover funds, that he requested a board of education to do so, or that such a request would be futile.

## 3. Elections— standing—taxpayer suit—violation of election laws

A plaintiff did not have taxpayer standing to bring an action alleging violation of election laws in the Attorney General's use of lawsuit proceeds for public service advertisements the year before he ran for governor where plaintiff failed to allege that the Treasurer or any state entity refused to file suit to recover the proceeds, that he requested a state entity to do so, or that such a demand would have been in vain.

## 4. Penalties, Fines and Forfeitures— taxpayer action—qui tam

A taxpayer did not have standing under a qui tam theory to bring an action arising from an attorney general's public service announcements the year before he ran for governor. Qui tam actions are brought under a statute that allows a private person to sue for a penalty, part of which the government or a specified public institution will receive. There is no statute allowing this plaintiff to sue for a penalty based upon alleged constitutional or election law violations as specified in the complaint.

## 5. Elections— standing—public service announcements by candidate—statement of claim

A taxpayer had standing under N.C.G.S. § 163-278.28(a) to bring claims relating to election laws arising from public service

announcements by a sitting attorney general who was running for governor where the plaintiff alleged that he was a registered voter of Wake County.

**6. Elections— declaratory judgment—use of public funds for public service campaign by candidate—no actual controversy**

The trial court properly granted defendants' Rule 12(b)(6) motion to dismiss plaintiff's claim for declaratory relief arising from an attorney general's use of lawsuit proceeds to fund public service announcements while he was running for governor. There was no actual controversy because the plain and clear language of the N.C.G.S. § 163-278.16A prohibits advertisements only in years when the candidate's name appears on an election ballot and Council of State candidates were not on the ballot when these ads ran in 1999. Furthermore, plaintiff alleged that the lawsuit proceeds were state funds, which the Attorney General is not required to report to the State Board of Elections.

Appeal by plaintiff from order entered 17 May 2000 by Judge Stafford G. Bullock in Superior Court, Wake County. Heard in the Court of Appeals 22 May 2001.

*Hunter, Johnson, Elam & Benjamin, P.L.L.C., by Robert N. Hunter, Jr. and Jason A. Knight, for plaintiff-appellant.*

*Attorney General Michael F. Easley, by General Counsel Andrew A. Vanore, Jr., and Special Deputy Attorneys General W. Dale Talbert, Norma S. Harrell, and Susan K. Nichols, for defendants-appellees.*

TIMMONS-GOODSON, Judge.

On 13 October 1999, Charles Franklin Fuller ("plaintiff") filed an action against then Attorney General Michael F. Easley ("Attorney General Easley" or "the Attorney General"), State Treasurer Harlan E. Boyles ("Treasurer Boyles"), and "unknown Boards of Education to be identified hereinafter." Plaintiff brought the action as "a registered voter and citizen of Wake County." Plaintiff alleged that in his official capacity, Attorney General Easley filed certain lawsuits to collect damages for unfair and deceptive trade practices (hereinafter "the lawsuits"). According to plaintiff, the proceeds recovered in the lawsuits were "state funds or penal funds" which should have been remitted to Treasurer Boyles. Plaintiff also alleged that the lawsuit pro-

ceeds were disguised campaign contributions, which should have been reported to the State Board of Elections.

Plaintiff further claimed that Attorney General Easley improperly used the lawsuit proceeds for a "public service message campaign." According to the complaint, Attorney General Easley appeared in so-called public service messages while a declared candidate for the Office of Governor, and the messages were, in fact, communications to support the Attorney General's candidacy for Governor. Plaintiff contended that in undertaking the above-alleged actions, Attorney General Easley violated the North Carolina State Constitution and state election laws.

Pursuant to his allegations, plaintiff requested a variety of relief, including, *inter alia*, a temporary restraining order, injunctions, restitution and costs, remittance of the lawsuit proceeds to either Treasurer Boyles or "the unknown Boards of Education," and mandamus relief requiring Attorney General Easley to report the lawsuit proceeds to the State Board of Elections. In addition, plaintiff requested a declaratory judgment, asking the trial court to interpret the meaning of the state election laws allegedly violated by the Attorney General and to determine the character of the lawsuit proceeds.

Finding that plaintiff failed to demonstrate a likelihood of success at trial, the trial court denied plaintiff's request for a temporary restraining order. Defendants filed a motion to dismiss based upon Rules 12(b)(1), 12(b)(2), and 12(b)(6) of our Rules of Civil Procedure. Following a hearing, the trial court summarily dismissed plaintiff's complaint, as amended. From this order, plaintiff appeals.

---

Preliminarily, we note that although defendants moved to dismiss plaintiff's complaint on a variety of grounds, the trial court failed to specify upon which of those grounds it based its dismissal. As such, plaintiff presumes and argues on appeal that the trial court dismissed his complaint due to a lack of standing and/or a failure to state a claim.

Based upon plaintiff's arguments, there are two pertinent issues presented by the present appeal: (I) whether plaintiff had standing to sue; (II) whether plaintiff stated a claim upon which declaratory and other equitable relief could have been granted.

FULLER v. EASLEY

[145 N.C. App. 391 (2001)]

I.

**[1]** We first address plaintiff's argument that the trial court erred in dismissing his complaint based upon his lack of standing to bring the present action. Standing concerns the trial court's subject matter jurisdiction and is therefore properly challenged by a Rule 12(b)(1) motion to dismiss. N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) (1999); *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 525 S.E.2d 441 (2000); N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) (1999). Our review of an order granting a Rule 12(b)(1) motion to dismiss is *de novo. Smith v. Privette*, 128 N.C. App. 490, 493, 495 S.E.2d 395, 397 (1998).

Plaintiff first contends that he had standing to sue based upon his status as a Wake County taxpayer. Allegations in plaintiff's complaint which support this argument are those which reference plaintiff's status as a taxpayer, registered voter, and citizen of Wake County.

Generally, an individual taxpayer has no standing to bring a suit in the public interest. *Green v. Eure, Secretary of State*, 27 N.C. App. 605, 608, 220 S.E.2d 102, 105 (1975). However, the taxpayer may have standing if he can demonstrate:

[A] tax levied upon him is for an unconstitutional, illegal or unauthorized purpose[;] that the carrying out of [a] challenged provision will cause him to sustain personally, a direct and irreparable injury[;] or that he is a member of the class prejudiced by the operation of [a] statute.

*Texfi Industries v. City of Fayetteville*, 44 N.C. App. 268, 270, 261 S.E.2d 21, 23 (1979) (citations omitted). Our review of plaintiff's complaint reveals no allegations which allow him to sue as an individual taxpayer.

**[2]** Nonetheless, plaintiff may have had standing to bring a taxpayer action, not as an individual taxpayer, but on behalf of a public agency or political subdivision, if " 'the proper authorities neglect[ed] or refus[ed] to act.' " *Guilford County Bd. of Comrs. v. Trogdon*, 124 N.C. App. 741, 747, 478 S.E.2d 643, 647 (1996) (quoting *Branch v. Board of Education*, 233 N.C. 623, 625, 65 S.E.2d 124, 126 (1951)). To establish standing to bring an action on behalf of public agencies and political divisions, a taxpayer must allege

that he is a taxpayer of [that particular] public agency or political subdivision, . . . [and either,] "(1) there has been a demand on and refusal by the proper authorities to institute proceedings for the

protection of the interests of the political agency or political sub-division; or (2) a demand on such authorities would be useless."

*Id.* (citation omitted).

Plaintiff alleged in his complaint that Attorney General Easley violated Article IX, section 7 of the North Carolina Constitution. Article IX, section 7 provides:

All moneys, stocks, bonds, and other property belonging to a county school fund, and the clear proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of the State, shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools.

N.C. Const. art. IX, § 7. Plaintiff claimed, based upon the aforementioned constitutional provision, that the lawsuit proceeds were to be remitted to "unknown boards of education."

The only allegation indicating plaintiff had a right to sue under Article IX, section 7 was one noting his status as a taxpayer of Wake County. This allegation was insufficient to support his standing to sue on behalf of any Board of Education. Plaintiff failed to allege that the Wake County Board of Education or any other Board of Education refused to bring a suit to recover funds, that he requested the Board do so, or that such a request would be futile. Furthermore, plaintiff admitted in oral argument that there was no evidence in the record indicating that he had complied with the prerequisites for bringing a taxpayer action on behalf of the unknown Boards. We are therefore satisfied that plaintiff did not have taxpayer standing to challenge Attorney General Easley's alleged violation of Article IX, section 7 of our State Constitution.

[3] We likewise find that plaintiff did not have taxpayer standing to challenge the Attorney General's alleged violation of state election laws. In his complaint, plaintiff claimed that the funds recovered in the lawsuits should be remitted to the State Treasurer and further named Treasurer Boyles as a defendant. Given these allegations, we can only assume that plaintiff brought the action to recover the proceeds on behalf of the State Treasurer. However, plaintiff again failed to allege that the Treasurer or any state entity refused to file suit to recover the lawsuit proceeds, that he requested a state entity do so, or that such a demand would have been made in vain. We therefore conclude that plaintiff did not have taxpayer standing to bring the

present action on behalf of either the unknown boards of education or any state entity.

**[4]** Plaintiff next alleged in his complaint and argues on appeal that he had standing to sue based upon the theory of *qui tam*. We are not so persuaded.

*Qui tam* actions are those "brought *under a statute* that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive." *Black's Law Dictionary* 1262 (7th ed. 1998) (emphasis added); *see also In re Lancaster*, 290 N.C. 410, 424, 226 S.E.2d 371, 380 (1976). The critical factor allowing plaintiffs to sue under the theory of *qui tam* is the existence of a statute specifically authorizing such suit. *See Lancaster*, 290 N.C. at 424, 226 S.E.2d at 380. There is no such statute allowing plaintiff *sub judice* to sue for a penalty based upon alleged violations of the state election laws or the constitutional provision specified in plaintiff's complaint. Plaintiff's argument is therefore meritless.

**[5]** Finally, plaintiff argues and we agree that he had standing to sue to enforce state election laws under section 163-278.28(a) of our General Statutes. *See* N.C. Gen. Stat. § 163-278.28(a) (1999). Section 163-278.28(a) provides: "The superior courts of this State shall have jurisdiction to issue injunctions or grant any other equitable relief appropriate to enforce the provisions of this Article upon application by any registered voter of the State." As plaintiff alleged that he was a registered voter of Wake County, section 153-278.28(a) allowed him to sue to enforce state election laws by seeking injunctive and other equitable relief.

Based upon the aforementioned reasoning, we conclude that plaintiff had standing to bring only those claims seeking equitable relief based upon alleged violations of state election laws.

II.

**[6]** We next address plaintiff's argument that the trial court erred in granting the motion to dismiss based upon Rule 12(b)(6). Plaintiff contends on appeal that he was entitled to relief, as he stated claims for declaratory and other equitable relief based upon Attorney General Easley's alleged violations of state election laws. We disagree.

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint. *See* N.C. Gen. Stat. § 1A-1, Rule 12(b)(6)

(1999). To survive a Rule 12(b)(6) motion, "the complaint must provide sufficient notice of the events and circumstances from which the claim arises, and must state allegations sufficient to satisfy the substantive elements of at least some recognized claim." *Taylor v. Taylor*, 143 N.C. App. 664, 668, 547 S.E.2d 161, 164 (2001) (citation and internal quotation marks omitted). In ruling on the motion, the trial court must take the complaint's allegations as true and determine whether they "are sufficient to state a claim upon which relief may be granted under some legal theory." *Id.*

### Request for Declaratory Judgment

In his complaint, plaintiff first requested that the trial court declare the parties' rights under sections 163-278.16A of our General Statutes. Where a complaint requesting declaratory relief "alleges the existence of a real controversy arising out of the parties' opposing contentions and respective legal rights," it is normally sufficient. *Morris v. Plyler Paper Stock Co.*, 89 N.C. App. 555, 557, 366 S.E.2d 556, 558 (1988). Thus, although plaintiff's position may be wrong, if he alleges "a controversy which *should be settled*" and " 'is entitled to a declaration of rights with respect to the matters alleged[,]' " plaintiff states a claim for declaratory relief. *Walker v. Charlotte*, 268 N.C. 345, 348, 150 S.E.2d 493, 495 (1966) (emphasis added) (citation omitted); N.C. Gen. Stat. § 1-253 (1999) ("Courts . . . shall have power to declare rights . . . whether or not further relief is or could be claimed."). Even where a genuine controversy existed, this Court has found that if plaintiffs have "no basis for the relief they seek," dismissal was proper. *Carter v. Stanly County*, 125 N.C. App. 628, 632, 482 S.E.2d 9, 11 (1997); *Forbis v. Honeycutt*, 301 N.C. 699, 701, 273 S.E.2d 240, 241 (1981).

Section 163-278.16A provides:

After December 31 prior to a general election in which a Council of State office will be on the ballot, no declared candidate for that Council of State office shall use or permit the use of State funds for any advertisement or public service announcement in a newspaper, on radio, or on television that contains that declared candidate's name, picture, or voice, except in case of State or national emergency and only if the announcement is reasonably necessary to that candidate's official function. For purposes of this section, "declared candidate" means someone who has publicly announced an intention to run.

N.C. Gen. Stat. § 163-278.16A (1999) (effective date Jan. 1, 1998).

**FULLER v. EASLEY**

[145 N.C. App. 391 (2001)]

According to plaintiff, section 163-278.16A

is capable of several distinct interpretations and is in need of construction. One construction is that for any year *after December 31, 1998* no declared candidate may use state funds for campaign like prohibited "public service announcements" and another construction is that after December 31 for any year immediately prior to a general election no candidate may use state funds for campaign like prohibited "public service announcements." . . . . The parties are in need of determination of which construction of the statute is lawful and intended.

The former interpretation advocated by plaintiff would support his claim that the Attorney General violated the statute, as he alleged Attorney General Easley, then a declared candidate for Council of State, appeared in public service announcements on or after December 31, 1998. The latter interpretation supports defendants' position that the Attorney General did not violate section 163-278.16A, because he did not appear in an advertisement after 31 December, prior to election year 2000.

Our *de novo* review of section 163-278.16A reveals that plaintiff was not entitled to declaratory relief concerning the statute's meaning. Section 163-278.16A specifically applies "[a]fter ***December 31 prior to a*** general election in which a Council of State office will be on the ballot." N.C. Gen. Stat. § 163-278.16A (emphasis added). Although the statute was effective on or after 1 January 1998, it does not denote 31 December ***1998*** as the specific date after which it perpetually bars all public service announcements by Council of State candidates. Certainly, if the General Assembly intended section 163-278.16A to apply from 31 December 1998 forward, it would have so specified. *See In Re Appeal of Bass Income Fund*, 115 N.C. App. 703, 706, 446 S.E.2d 594, 596 (1994) (noting that "it would have been a simple matter to include [an] explicit phrase" in statute, thus giving it a certain effect).

We hold that section 163-278.16A applies only to prohibit advertisements in years when declared Council of State candidates are on an election ballot. Given that the meaning of section 163-278.16A is plain and clear, we conclude there was no actual controversy between the parties concerning the meaning of section 163-278.16A. *See Walker*, 268 N.C. at 348, 150 S.E.2d at 495.

Plaintiff further requested that the trial court determine the nature of the lawsuit proceeds in relation to the Attorney General's duty to report those proceeds pursuant to section 163-278.36 of our General Statutes. During the pendency of the lawsuits, but prior to the filing of the present action, our General Assembly amended section 163-278.36. Plaintiff's claims concern both section 163-278.36, as it originally appeared and as amended. Prior to May 1999, section 163-278.36 read as follows:

> **Elected officials to report funds:** All contributions to, and all expenditures from any "booster fund," "support fund," "unofficial office account" or any other similar source which are made to, in behalf of, or used in support of any person holding an elective office for any political purpose whatsoever during his term of office shall be deemed contributions and expenditures as defined in this Article and shall be reported as contributions and expenditures as required by this Article. The annual report shall show the balance of each separate fund or account maintained on behalf of the elected office holder.

N.C. Gen. Stat. § 163-278.36 (1995). Section 163-278.36 now provides:

> **Elected officials to report funds:** All donations to, and all payments from any "booster fund," "support fund," "unofficial office account" or any other similar source made or used in support of an individual's candidacy for elective office, or in support of an individual's duties and activities while in an elective office shall be deemed contributions and expenditures as defined in this Article and shall be reported as contributions and expenditures as required by this Article. The reports due in January and July of each year shall show the balance of each separate fund or account maintained on behalf of the elected office holder.

N.C. Gen. Stat. § 163-278.36 (1999) (effective date May 4, 1999).

An examination of plaintiff's complaint, as amended, reveals that he failed to state a claim for declaratory relief concerning the nature of the lawsuit proceeds, as they relate to the alleged violation of section 163-278.36. Although plaintiff claimed that the lawsuit proceeds were disguised campaign contributions, plaintiff also alleged that the lawsuit proceeds were "either state funds or penal funds [which] should be remitted to either the State Treasurer or local school boards." State funds do not fall within the purview of either the orig-

inal or the amended version of section 163-278.36, as "state funds" are neither "contributions" or "donations." *See* N.C. Gen. Stat. § 163-278.6 (1999) (defining "contribution"). It follows that plaintiff failed to allege an actual controversy concerning the lawsuit proceeds and consequently failed to state a claim for declaratory relief.

### Other Equitable Relief

Given our resolution of the aforementioned issue, we find that plaintiff likewise failed to state claims for other equitable relief under either section 163-278.16A or section 163-278.36. As noted *supra*, section 163-278.16A prohibits a Council of State candidate from appearing in public service announcements during years when the candidate's name appears on an election ballot. *See* N.C. Gen. Stat. § 163-278.16A. Plaintiff in the case *sub judice* alleged that Attorney General Easley violated the statute by appearing in public service announcements running in 1999. However, Council of State candidates, including Attorney General Easley, were not on an election ballot in 1999. It follows that section 163-278.16A did not prohibit the advertisements, and thus, plaintiff's claim to the contrary must fail.

Concerning plaintiff's claims brought pursuant to section 163-278.36, because he alleged the lawsuit proceeds were, in fact, "state funds," neither version of section 163-278.36 required Attorney General Easley to report the proceeds to the State Board of Elections. We therefore conclude that plaintiff failed to state a claim for which relief could be granted under section 163-278.36.

For the foregoing reasons, we affirm the order of the trial court.

Affirmed.

Judges CAMPBELL and JOHN concur.