VIKTORIA KING, A MINOR, BY AND THROUGH HER PARENT, REVONDIA HARVEY-BARROW, PLAINTIFF-APPELLANT v. BEAUFORT COUNTY BOARD OF EDUCATION; JEFFREY MOSS, SUPERINTENDENT, BEAUFORT COUNTY SCHOOLS, IN HIS OFFICIAL CAPACITY DEFENDANTS-APPELLEES

No. COA08-1038

(Filed 20 October 2009)

## 1. Constitutional Law— right to free public education— access to alternative education

The trial court did not err by allowing defendants' motion to dismiss a declaratory judgment action under N.C.G.S. § 1A-1, Rule 12(b)(6) for defendants' alleged failure to provide an alter-

native education program for a student given a long-term suspension because the disposition of students who have been expelled or given long-term suspensions is a decision involving the administration of the public schools which is best left to the Legislature.

**2. Parties— failure to join necessary party—improper dismissal**

The trial court's dismissal for failure to join a necessary party under N.C.G.S. § 1A-1, Rule 12(b)(7) was erroneous because: (1) in the absence of a proper motion by a competent person, the defect should be corrected by an *ex mero motu* ruling of the court; and (2) assuming *arguendo* that the State of North Carolina was a necessary party to this action, the proper remedy was to join the State rather than dismiss the action.

**3. Administrative Law— judicial review—subject matter jurisdiction**

The trial court did not err by denying defendants' motion to dismiss for lack of subject matter jurisdiction based on plaintiff's alleged failure to exhaust administrative remedies prior to filing this declaratory judgment action because plaintiff was challenging the constitutionality of her exclusion from alternative education during her period of suspension rather than a review of the actual suspension, and under these circumstances, plaintiff was without an adequate administrative remedy.

Judge GEER dissenting.

Appeal by plaintiff and cross-appeal by defendants from order entered on 16 May 2008 by Judge William C. Griffin, Jr., in Beaufort County Superior Court. Heard in the Court of Appeals 11 February 2009.

*Advocates for Children's Services, Legal Aid of North Carolina, Inc., by Erwin Byrd, Keith Howard, and Lewis Pitts; and Children's Law Clinic, Duke University School of Law, by Jane Wettach, for plaintiff-appellant.*

*Tharrington Smith, L.L.P., by Curtis H. Allen III and Robert M. Kennedy, Jr., for defendant-appellees.*

*Roberts & Stevens, P.A., by Christopher Z. Campbell and K. Dean Shatley, II, on behalf of North Carolina School Boards Association; and North Carolina School Boards Association, by Allison B. Schafer, amicus curae.*

CALABRIA, Judge.

Viktoria King ("plaintiff") was a tenth grade student at Southside High School in Beaufort County during the 2007-2008 school year. On 18 January 2008, a fight involving numerous students occurred, and plaintiff was one of the students involved. As a result, plaintiff was subsequently suspended for ten days, beginning 24 January 2008. Additionally, the principal of Southside High School recommended to Beaufort County School Superintendent Jeffrey Moss ("the superintendent") a long-term suspension for plaintiff for the remainder of the school year. The superintendent followed this recommendation and suspended plaintiff for the remainder of the 2007-2008 school year.

On 20 February 2008, plaintiff filed an action seeking declaratory relief from the Beaufort County Superior Court, alleging the Beaufort County Board of Education and the superintendent ("defendants") violated her constitutional rights. Specifically, plaintiff alleged defendants' failure to provide an alternative education program for a student given a long-term suspension violated her constitutional right to a free public education. Plaintiff also filed a Motion for Temporary Restraining Order and Preliminary Injunction asking the trial court to order defendants to provide plaintiff with access to educational services during her period of suspension. This motion was denied and the trial court dismissed plaintiff's complaint, pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(6) and 12(b)(7) (2007) of the North Carolina Rules of Civil Procedure. However, the trial court refused to dismiss plaintiff's complaint pursuant to Rule 12(b)(1). Plaintiff appeals the dismissal of her complaint. Defendants cross-appeal the court's denial of their Motion to Dismiss pursuant to Rule 12(b)(1).

## I.  Dismissal pursuant to Rule 12(b)(6)

[1] Plaintiff argues that the trial court erred by allowing defendants' Motion to Dismiss for failing to state a claim for which relief can be granted, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). We disagree.

On a Motion to Dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the standard of review is "whether, as a matter of law, the allegations of the complaint, treated as true,

are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)(citation omitted). The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief. *See Dixon v. Stuart*, 85 N.C. App. 338, 354 S.E.2d 757 (1987). A superior court's decision to dismiss a complaint under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure is reviewed *de novo* by this Court. *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (2003).

Plaintiff argues that the trial court erred by relying on *In re Jackson*, 84 N.C. App. 167, 352 S.E.2d 449 (1987) in assessing her claims. Plaintiff believes that *Jackson* is no longer viable after the decisions of the North Carolina Supreme Court in *Leandro v. State of North Carolina*, 346 N.C. 336, 488 S.E.2d 249 (1997) and *Hoke Cty. Bd. of Educ. v. State*, 358 N.C. 605, 599 S.E.2d 365 (2004). Both *Leandro* and *Hoke* addressed the qualitative aspects of a public education, determining that N.C. Const. art. I, § 15 and N.C. Const. art. IX, § 2 "combine to guarantee every child of this state an opportunity to receive a sound basic education in our public schools." *Leandro*, 346 N.C. at 347, 488 S.E.2d at 255. Specifically, the *Leandro* and *Hoke* Courts were attempting to remedy significant funding disparities between school districts statewide that were depriving students in poorer districts the opportunity to receive quality education. *Leandro* set out the essential pieces of what it considered to be a sound basic education, which is

one that will provide the student with at least: (1) sufficient ability to read, write, and speak the English language and a sufficient knowledge of fundamental mathematics and physical science to enable the student to function in a complex and rapidly changing society; (2) sufficient fundamental knowledge of geography, history, and basic economic and political systems to enable the student to make informed choices with regard to issues that affect the student personally or affect the student's community, state, and nation; (3) sufficient academic and vocational skills to enable the student to successfully engage in post-secondary education or vocational training; and (4) sufficient academic and vocational skills to enable the student to compete on an equal basis with others in further formal education or gainful employment in contemporary society.

*Id.* The problems addressed in these cases were limited to the quality of education in the context of school financing and did not address in any way the subject of school discipline.

Neither the *Leandro* nor the *Hoke* decision provides any guidance on how the fundamental right for an opportunity to receive a sound basic education applies in the context of student discipline. The last pronouncement specifically on the issue was by this Court in *Jackson.* "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same Court is bound by that precedent, unless it has been overturned by a higher court." *In re Civil Penalty,* 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). *Jackson* specifically dealt with the issue of long term student suspensions without access to alternative education, and found the arrangement to be acceptable. "Reasonable regulations punishable by suspension do not deny the right to an education but rather deny the right to engage in the prohibited behavior." *Jackson,* 84 N.C. App. at 176, 352 S.E.2d at 455. The Court went on to say:

> A student's right to an education may be constitutionally denied when outweighed by the school's interest in protecting other students, teachers, and school property, and in preventing the disruption of the educational system. As a general rule, a student may be constitutionally suspended or expelled for misconduct whenever the conduct is of a type the school may legitimately prohibit, and procedural due process is provided.

*Id.* This pronouncement applies directly to the plaintiff's situation and justifies the decision to suspend her until the 2008-2009 school year.

The disposition of students who have been expelled or suspended long term is ultimately a decision involving the administration of the public schools, a decision which is best left to the Legislature. As the Court noted in *Jackson,*

> [A] juvenile court judge does not have the power to legislate or to force school boards to do what he thinks they should do. Our legislature did not impose upon the public schools or other agency a legal obligation to provide an alternative forum for suspended students, and a court may not judicially create the obligation.

*Id.* at 178, 352 S.E.2d at 456. This statement is echoed in *Leandro.* "[T]he administration of the public schools of the state is best left to the legislative and executive branches of government." *Leandro,* 346 N.C. at 357, 488 S.E.2d at 261. Since the decision in *Jackson*

the Legislature has decreed that "[e]ach local board of education shall establish at least one alternative learning program and shall adopt guidelines for assigning students to alternative learning programs." N.C. Gen. Stat. § 115C-47(32a) (2007). These guidelines include "strategies for providing alternative learning programs, when feasible and appropriate, for students who are subject to long term suspension or expulsion." *Id.* The Legislature has clearly considered the issue of alternative education for students who are either suspended long term or expelled, and it did not choose to make access to alternative education mandatory. We have no authority to question this judgment.

There is nothing in either *Leandro* or *Hoke* that indicates that the Supreme Court intended to disturb precedent or change the standard of review regarding school discipline. Plaintiff's claims do not address the qualitative aspect of her education, as in *Leandro*, but deal instead with her right to access the public education system. Without a clear indication from a higher court or the Legislature that *Jackson* is no longer good law, we are bound by precedent. The trial court, relying on *Jackson*, properly dismissed plaintiff's complaint under Rule 12(b)(6) for failure to state a claim on which relief can be granted. Because dismissal was proper on these grounds, we need not consider plaintiff's additional Rule 12(b)(6) claims.

## II. Dismissal pursuant to Rule 12(b)(7)

[2] Although it is not relevant to our disposition of this case, we note that the trial judge's dismissal for failure to join a necessary party pursuant to Rule 12(b)(7) was error. A trial court is in error when it dismisses a case because a necessary party has not been joined. *White v. Pate*, 308 N.C. 759, 764, 304 S.E.2d 199, 202 (1983). When the absence of a necessary party is disclosed, the trial court should refuse to deal with the merits of the action until the necessary party is brought into the action. *Booker v. Everhart*, 294 N.C. 146, 158, 240 S.E.2d 360, 367 (1978). "[I]n the absence of a proper motion by a competent person, the defect should be corrected by *ex mero motu* ruling of the court." *Id.* Assuming, *arguendo*, that the State of North Carolina was a necessary party to this action, the proper remedy was to join the State rather than dismiss the action.

## III. Dismissal pursuant to Rule 12(b)(1)

[3] Defendants, in their only cross-assignment of error, argue that the trial court erred by denying their motion to dismiss based upon a lack of subject matter jurisdiction. We disagree.

Subject matter jurisdiction is a prerequisite for the exercise of judicial authority over any case or controversy. *Harris v. Pembaur*, 84 N.C. App. 666, 667-68, 353 S.E.2d 673, 675 (1987). The standard of review on a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction is *de novo*. *Fuller v. Easley*, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001).

Defendants argue the trial court lacked subject matter jurisdiction over plaintiff because she failed to utilize the administrative remedies available to her before instituting her action. "[W]here the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." *Presnell v. Pell*, 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979). However, when the only remedies available from the agency are shown to be inadequate, a party may seek redress in a court without exhausting administrative remedies. *Huang v. N.C. State University*, 107 N.C. App. 710, 715, 421 S.E.2d 812, 815-16 (1992).

Defendants allege that plaintiff failed to take advantage of available appeals pursuant to N.C. Gen. Stat. § 115C-391(e) before filing her action. This statute provides that a student suspended for more than ten days may appeal that suspension to the local school board. If the school board upholds the suspension, the student may then seek review in the superior court. N.C. Gen. Stat. § 115C-391(e) (2007). In the instant case, plaintiff filed her action in superior court while the appeal of her suspension before the school board was still pending.

The timing of the filing of plaintiff's action is immaterial because the issues raised by the action could not be addressed by the school board as part of the appeals process. Plaintiff was challenging the constitutionality of her exclusion from alternative education during her period of suspension; she was not seeking review of the actual suspension. The statute would only allow review of the latter, while no administrative procedure would permit review of the former. Under these circumstances, plaintiff was without an adequate administrative remedy and her claim was properly before the superior court. Defendants' cross-assignment of error is overruled.

Affirmed.

Judge ELMORE concurs.

Judge GEER dissents in a separate opinion.

**KING v. BEAUFORT CNTY. BD. OF EDUC.**

[200 N.C. App. 368 (2009)]

GEER, Judge, dissenting.

I would hold that *In re Jackson*, 84 N.C. App. 167, 352 S.E.2d 449 (1987), is no longer controlling authority following our Supreme Court's decision in *Leandro v. State*, 346 N.C. 336, 488 S.E.2d 249 (1997). I believe that *Leandro* and appellate decisions applying *Leandro* establish that the state constitutional right to education is a fundamental right. Because plaintiff has alleged that defendants' actions have completely denied her this fundamental right and because defendants bear the burden of establishing that their actions were necessary to promote a compelling governmental interest—a burden not negated by any allegations in the complaint—I would hold that the trial court improperly dismissed the complaint under Rule 12(b)(6).

The North Carolina constitution explicitly guarantees the right to a free public education: "The people have a right to the privilege of education, and it is the duty of the State to guard and maintain that right." N.C. Const. art. I, § 15. In *Leandro*, our Supreme Court concluded that "the intent of the framers [of the North Carolina constitution] was that *every child have a fundamental right to a sound basic education* which would prepare the child to participate fully in society as it existed in his or her lifetime." 346 N.C. at 348, 488 S.E.2d at 255 (emphasis added). The Court then confirmed that when a plaintiff presents competent evidence that a defendant is "denying children of the state a sound basic education, a denial of a fundamental right will have been established." *Id.* at 357, 488 S.E.2d at 261. This year, the Supreme Court reconfirmed the fundamental nature of this right in *Wake Cares, Inc. v. Wake County Bd. of Educ.*, 363 N.C. 165, 172, 675 S.E.2d 345, 350 (2009).

The majority suggests that *Leandro's* fundamental right analysis does not apply outside of the school financing context. Nothing in *Leandro*, however, suggests such a limitation. Moreover, in *Hoke County Bd. of Educ. v. State*, 358 N.C. 605, 620, 599 S.E.2d 365, 379 (2004), the Court concluded that "the constitutional right articulated in *Leandro* is vested in them all[,]" referring to all children in North Carolina regardless of age or the need of the particular child. It seems unlikely to me that the Supreme Court intended that a right "vested in" all North Carolina children would actually refer only to school financing. Finally, *Wake Cares* did not involve school financing, but rather the school calendar, and yet the Supreme Court again recited the fundamental nature of the right to education in North Carolina.

The Supreme Court explained in *Leandro* that once children present evidence that they are being denied a sound basic education, the burden shifts—as it does with all fundamental rights—to the defendants "to establish that their actions denying this fundamental right are 'necessary to promote a compelling governmental interest.' " 346 N.C. at 357, 488 S.E.2d at 261 (quoting *Town of Beech Mountain v. County of Watauga*, 324 N.C. 409, 412, 378 S.E.2d 780, 782, *cert. denied*, 493 U.S. 954, 107 L. Ed. 2d 351, 110 S. Ct. 365 (1989)). According to the Court, "[i]f defendants are unable to do so, it will then be the duty of the court to enter a judgment granting declaratory relief and such other relief as needed to correct the wrong while minimizing the encroachment upon the other branches of government." *Id.*

In contrast to *Leandro*, *Jackson* states that "[a] student's right to an education may be constitutionally denied when outweighed by the school's interest in protecting other students, teachers, and school property, and in preventing the disruption of the educational system." *Jackson*, 84 N.C. App. at 176, 352 S.E.2d at 455. The Court added that "*[r]easonable* regulations punishable by suspension do not deny the right to an education . . . ." *Id.* (emphasis added). This general weighing approach permitting reasonable regulations to outweigh the right to education more closely resembles a rational basis test than the scrutiny applicable to a fundamental right that was mandated by *Leandro. See* Joseph W. Goodman, *Leandro v. State and the Constitutional Limitation on School Suspensions and Expulsions in North Carolina*, 83 N.C.L. Rev. 1507 (Sept. 2005) (observing that the Court in *Jackson* "seemingly applied a lower rational basis standard"). Indeed, defendants acknowledge that *Jackson* applied the lesser rational basis test.

Because *Jackson* used a rational basis test to evaluate the deprivation of education resulting from a suspension, I do not believe its holding can control in this case. Instead, we should be applying the strict scrutiny standard set out in *Leandro*. Here, plaintiff alleged that because she was given a long-term suspension, was not provided an alternative education program, and was not given access to other public educational services, she has been completely denied access to a public education. She has further alleged that defendants cannot demonstrate that this action was necessary to promote a compelling governmental interest "because it was not necessary to completely deprive [plaintiff] of all educational services during her period of long-term suspension, even if it was necessary to remove her from [her high school] for the remainder of the year."

I would hold that these allegations are sufficient to state a claim for violation of plaintiff's constitutional right to an education.[1] Even if defendants' long-term suspension of plaintiff for fighting could be deemed justified under the constitution, plaintiff's allegations are still sufficient to draw into question whether defendants' decision to completely bar plaintiff from a public school education for an extended period was "narrowly tailored" to serve its compelling governmental interest regarding school discipline. *See Stephenson v. Bartlett*, 355 N.C. 354, 377, 562 S.E.2d 377, 393 (2002) ("Under strict scrutiny, a challenged governmental action is unconstitutional if the State cannot establish that it is narrowly tailored to advance a compelling governmental interest.").

Defendants should have to show that in order to meet their compelling interest, it was not only necessary to suspend plaintiff from her high school, but also to preclude her from obtaining her education through an alternative school program or access to other public educational services. I would, therefore, hold that plaintiff has stated a claim for violation of her constitutional right to a sound, basic education. *See Copper ex rel. Copper v. Denlinger*, 193 N.C. App. 249, 286, 667 S.E.2d 470, 494 (2008) (observing that School Board may be able to demonstrate at summary judgment stage that no constitutional violation had occurred, but that "[a]t the Rule 12(b)(6) stage, however, the Board has not established that plaintiffs have failed to state a claim for relief"), *appeal dismissed in part and disc. review granted*, 363 N.C. 124, 672 S.E.2d 686 (2009).

The majority, however, asserts that "[t]he disposition of students who have been expelled or suspended long term is ultimately a decision involving the administration of the public schools, a decision which is best left to the Legislature." In *Leandro*, the Supreme Court soundly rejected the defendants' claim that "educational adequacy claims" should not be decided by the courts: "When a government action is challenged as unconstitutional, the courts have a duty to determine whether that action exceeds constitutional limits." 346 N.C. at 345, 488 S.E.2d at 253. Later in its opinion, the Court noted the need to give "every reasonable deference to the legislative and executive branches when considering whether they have established and are administering a system that provides the children of the various

---

1. I simply cannot accept the trial court's determination that a one-semester suspension is only a "temporary" halt of educational services that does not implicate *Leandro*. While for adults, five months might fly by, five months in the education of a child is not a minor deprivation.

school districts of the state a sound basic education[,]" but stressed that "the judicial branch has its duty under the North Carolina Constitution." *Id.* at 357, 488 S.E.2d at 261. Since plaintiff has sufficiently alleged that her constitutional right to education has been denied, I believe it is the duty of the courts to address that issue. We do not defer to the other branches of government or to local governments in matters involving the constitution.

The trial court, however, further concluded that no constitutional claim was available because an adequate alternative state remedy exists. *See Corum v. Univ. of N.C.*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 ("Therefore, in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution."), *cert. denied sub nom. Durham v. Corum*, 506 U.S. 985, 121 L. Ed. 2d 431, 113 S. Ct. 493 (1992). The trial court pointed to a student's right to appeal a suspension under N.C. Gen. Stat. § 115C-391(e) (2007). Essentially, plaintiff's claim is that she must be provided with alternative education opportunities even if she is removed from her high school as a result of a long-term suspension. I agree with the majority opinion that an administrative appeal of her long-term suspension would not provide plaintiff with an opportunity to present this claim or obtain the desired relief. *See Craig v. New Hanover County Bd. of Educ.*, 363 N.C. 334, 340, 678 S.E.2d 351, 355 (2009) (holding that adequate alternative state remedy "must provide the possibility of relief under the circumstances"). Just as the majority opinion concludes that plaintiff's claim was not precluded by a failure to exhaust her administrative remedies, I would hold that she had no adequate alternative state remedy that would preclude her constitutional claim.

Consequently, I would hold that plaintiff has sufficiently alleged a violation of her fundamental right to education. Since no adequate alternative state remedy exists, she is entitled to pursue her constitutional claim in the courts. I concur in the majority's holding that defendants were not entitled to a dismissal of plaintiff's claim under Rules 12(b)(1) and 12(b)(7). I would, therefore, hold that the trial court erred in dismissing plaintiff's complaint and must respectfully dissent.